IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM JAMES COCKSHUTT, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 3:19-CV-0896-BH | |
| § | | |
| ANDREW SAUL, § | | |
| COMMISSIONER OF SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
| Defendant. § | Consent Case[1] | |

**MEMORANDUM OPINION AND ORDER**

William James Cockshutt (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner)[2] denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (docs. 1, 12). Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **REVERSED in part**, and the case is **REMANDED** for further administrative proceedings.

**I. BACKGROUND**

On September 30, 2016, Plaintiff filed his application for DIB, alleging disability beginning on December 19, 2014. (doc. 9-1 at 181.)[3] His claim was denied initially on December 30, 2016 (*Id.* at 84), and upon reconsideration on February 10, 2017 (*id.* at 89). On March 1, 2017, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 91.) He appeared and

---

[1]By consent of the parties and order filed June 2, 2020 (doc. 17), this matter has been transferred for the conduct of all further proceedings and the entry of judgment.

[2]At the time this appeal was filed, Nancy A. Berryhill was the Acting Commissioner of the Social Security Administration, but Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019, so he is automatically substituted as a party under Fed. R. Civ. P. 25(d).

[3]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

testified at a hearing on March 5, 2018. (*Id.* at 34.)  On May 25, 2018, the ALJ issued a decision finding him not disabled. (*Id.* at 11.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council on June 12, 2018.  (*Id.* at 177.)  The Appeals Council denied his request for review on April 4, 2019, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5.)  He timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

## A. Age, Education, and Work Experience

Plaintiff was born on November 20, 1974, and was 42 years old at the time of the hearing. (doc. 12-1 at 36, 181.)  He had completed some college and could communicate in English. (*Id.* at 36.)  He had past relevant work as an avionics technician, a shop supervisor, and a technical instructor. (*Id.* at 44.)

## B. Medical Evidence

From April 13, 2010 through December 14, 2017, Plaintiff received medical treatment primarily through the Department of Veterans Affairs (VA) for multiple conditions, including lumbar degenerative disc disease, gastroesophageal reflux disease (GERD), acne, major depressive disorder, insomnia, anxiety, adjustment disorder, obstructive sleep apnea, migraine headaches, left foot fracture residuals with heel spur, left heel bursitis, right eye hordeolum and map dot corneal dystrophy, psoriasis, tinnitus, bilateral hearing loss, nocturia, and eczema.  (doc. 9-1 at 313-612, 732-93, 878-931, 995-1091.)  The VA assigned him a 70%[4] service-connected disability rating (VA

---

[4]The medical impairment breakdown of his 70% VA rating was 10 percent to lumbar degenerative disc disease and strain; 0 percent to GERD; 0 percent to acne; 30 percent to major depressive disorder; 50 percent to obstructive sleep apnea; 30 percent to migraine headaches; 0 percent to left foot fracture residuals with heel spur; 10 percent to hordeolum and map dot corneal dystrophy, right eye; 10 percent to psoriasis; 10 percent to tinnitus; and 10 percent to left heel bursitis. (*See id.* at 934-39, 953-54, 969.)

rating) for the period between March 1, 2015 and August 22, 2017, which increased to 80%[5] as of August 23, 2017.[6] (*Id.* at 969.)

On December 16, 2016, James Wright, M.D., a state agency medical consultant (SAMC), completed a physical Residual Functional Capacity (RFC) assessment based on the medical evidence. (*Id.* at 55-57.) He opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and push and/or pull without limitations, other than shown for lift and/or carry, with no postural, manipulative, visual, or communicative limitations. (*Id.* at 55-56.) Dr. Wright determined that Plaintiff's alleged severity of symptoms was partially consistent with the evidence of record. (*Id.* at 55.) On February 8, 2017, SAMC Karmen Hopkins, M.D., generally affirmed Dr. Wright's physical RFC assessment, except she opined that Plaintiff could only lift and/or carry 20 pounds occasionally and 10 pounds frequently. (*Id.* at 74-76.)

On December 27, 2016, State Agency Psychological Consultant (SAPC) Murray Lerner, Ph.D., completed a Psychiatric Review Technique (PRT) for Plaintiff. (*Id.* at 52-54.) He opined that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (*Id.* at 52.) Dr. Lerner also completed a mental RFC assessment and found that Plaintiff retained the mental capabilities to understand, remember, and carry out detailed but not complex instructions; make basic decisions; attend and concentrate for

---

[5] The medical impairment breakdown of his 80% VA rating remained the same, except lumbar degenerative disc disease had increased to 20 percent. (*Id.* at 973.)

[6] As discussed below, Plaintiff testified that his VA rating had increased to 90%. (*See id.* at 38.) However, there is no record of this rating in the medical record, and it is unclear when that rating became effective.

3

extended periods; accept instructions; and respond appropriately to changes in routine work setting. (*Id.* at 58.) On February 10, 2017, Abesie Kelly, Ph.D., another SAPC, reviewed the medical evidence and completed a mental RFC that mirrored Dr. Lerner's assessment. (*Id.* at 77-78.)

**C.     Hearing**

On March 5, 2018, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (*Id.* at 34-47.) Plaintiff was represented by an attorney. (*Id.* at 36.)

   *1.     Plaintiff's Testimony*

Plaintiff testified that he retired from the military on February 28, 2015, but had last worked when he went on terminal leave in mid-December 2014. (*Id.* at 38.) At a recent appointment for his migraines, his doctor changed his medication to help with the severity and frequency of his monthly headaches, but she was not sure what was causing them. (*Id.*) He never had Botox treatment for his migraines, and imaging studies of his cervical spine were negative. (*Id.* at 38-39.) He received chiropractic treatment for his lower back problems, but the chiropractor advised against surgery unless it got to where he could not do anything; he had never received spine injections. (*Id.* at 39.) He was seeing the VA for his depression and anxiety; his mood was "a little bit better" when taking Cymbalta, but he remained depressed because his migraines drained him and he did not want to do anything. (*Id.* at 40.) He avoided big crowds, and his anxiety kept him awake at night because of his racing thoughts. (*Id.* at 41.) He had experienced migraines when he was working as an aviation electronics technician, and they caused him to miss two to three days of work a month during his last three years of working. (*Id.* at 42.) They had worsened since 2014 or 2015 and recently averaged between eight and nine per month, although he had as many as twelve per month. (*Id.*) The migraines typically lasted between 10 and 12 hours, and he would need to take trazondone, turn

4

off the lights and TV, and try to sleep. (*Id.* at 43.) His back pain limited his ability to bend and stoop or to lift more than a gallon of milk. (*Id.*) If he sat or stood still for more than 30 minutes at a time, his back stiffened, his pain increased, and he would need to move around and stretch. (*Id.* at 43-44.)

### 2. *VE's Testimony*

The VE testified that Plaintiff had previous work experience as an avionics technician, which was light work with a SVP of 6; a shop supervisor, which was light work with a SVP of 8; and a technical instructor, which was light work with a SVP of 8. (*Id.* at 44.) A hypothetical person with the same age, education, and work experience history as Plaintiff with the following limitations would not be able to sustain his prior work: lift 20 pounds occasionally and 10 pounds frequently; stand or walk and sit six hours in an eight-hour day, with the ability to get up and sit or change positions every 30 to 45 minutes while within the work zone; avoid ropes, scaffolds, climbing, ladders, or crawling, but perform other postural activities occasionally; avoid cold and heat extremes, wet and humid environments, vibration, fumes, odors, dust, hazards, and hazardous machinery; understand, remember, and carry out detailed tasks and instructions; have occasional public contact; have occasional coworker and supervisor interaction; and perform routine and repetitive work, with the ability to ask questions or ask for help. (*Id.* at 44-45.) He could perform light, SVP-2 level work, including assembler, small products with 200,000 jobs nationally, mail clerk with 90,000 jobs nationally, and office helper with 115,000 jobs nationally, all of which were consistent with the DOT. (*Id.* at 45-46.) If a person missed work on a consistent, monthly basis, he could only miss one day a month to be competitive for those jobs. (*Id.* at 46.)

### D. ALJ's Findings

The ALJ issued a decision denying benefits on May 25, 2018. (*Id.* at 11.) At step one, he

5

found that Plaintiff had met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since the alleged onset date of December 19, 2014. (*Id.* at 16.) At step two, the ALJ found that he had the following severe impairments: degenerative disc disease, sleep apnea, GERD, psoriasis, tinnitus, obesity, depression, and anxiety. (*Id.*) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the social security regulations. (*Id.* at 20.)

Next, the ALJ determined that Plaintiff retained the RFC to lift 20 pounds occasionally and 10 pounds frequently; walk/stand and sit six hours in an eight-hour day, with the ability to change positions every 30 to 45 minutes within the work zone; never climb ropes, scaffolds, or ladders and never crawl, with all other postural activities performed at the occasional level; avoid temperature extremes, wet and humid environments, vibration, fumes, odors, dust, hazards, and hazardous machinery; understand, carry out and remember detailed tasks and instructions; have occasional public contact and occasional coworker and supervisor interaction; and perform routine and repetitive work activity, with the ability to ask questions and ask for help. (*Id.* at 23.) At step four, the ALJ determined that Plaintiff was unable to perform his past work. (*Id.* at 27.) At step five, the ALJ found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that he was not disabled whether or not he had transferable job skills, but considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.* at 28.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from December 19, 2014, through the date of his decision. (*Id.* at 29.)

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See Id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage

7

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either

by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. ISSUES FOR REVIEW

Plaintiff presents four issues for review:

1. Did the Commissioner apply the wrong legal standard in holding that [Plaintiff's] VA disability rating had little probative value to his social security disability application?

2. Is Agency Q & A 09-036 a valid interpretive rule on its face where it imposes a higher burden of proof on claimants than otherwise required by law to prove that migraine headaches are medically determinable?

3. Did the Commissioner arbitrarily and capriciously interpret and apply Agency Q & A 09-036 to [Plaintiff] in failing to recognize his migraine headaches as medically determinable because [he] hadn't undergone objective medical testing ruling out over 300 medical disorders that can produce headaches?.

4. Did the Commissioner's error in failing to find Plaintiff's migraine headaches medically determinable result in prejudicial error as the Commissioner failed to give any weight to a treating source opinion that Plaintiff's migraines would cause him to miss work at least once per week?

(doc. 12 at 5.)

### IV. VA DISABILITY DETERMINATION

Plaintiff argues that the ALJ failed to adequately explain why he did not give his VA ratings great weight. (*Id*. at 10-12.)

"A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d

9

520, 522 (5th Cir. 2001) (citations omitted); *see also* SSR 06–03p, 2006 WL 2329939 at *6 (S.S.A. Aug. 9, 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). A VA disability determination is entitled to "great weight" in most cases, but "the relative weight to be given to the determination varies depending upon the factual circumstances of each case." *Chambliss*, 269 F.3d at 522. "ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *Id.*; *see also Albo v. Colvin*, No. 2:12-CV-0066, 2013 WL 5526584, at *8 (N.D. Tex. Sept. 30, 2013) (an ALJ's "decision must show meaningful consideration of the VA disability determination and provide specific reasons for giving the determination diminished weight.") (citing *Chambliss*, 269 F.3d at 523). "Although there is no bright-line rule . . . setting forth what level of explanation or discussion of valid reasons is necessary to be considered adequate, some level of discussion and/or scrutiny of the VA disability determination is required." *Harris-Nutall v. Colvin*, No. 3:15-CV-3334-D, 2016 WL 3906083, at *7 (N.D. Tex. July 19, 2016) (quoting *Albo*, 2013 WL 5526584, at *8). "If the ALJ fails to consider the disability rating and explain her reasons for discounting it, she has failed to apply the proper legal standard and committed reversible error." *Rasco v. Berryhill*, No. 4:17-CV-946, 2018 WL 587948, at *4 (S.D. Tex. Jan. 5, 2018) (citing cases).

Here, the ALJ acknowledged that the VA assigned Plaintiff a service-connected disability rating, but afforded little weight to those ratings. (doc. 9-1 at 26.) He explained that a disability rating by the VA was "of little probative value in these proceedings" because the VA and the SSA utilized "fundamentally different" disability determination processes. (*Id.*) He also explained that unlike the SSA, the VA "does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the

10

claimant is able to perform either his past work or other work that exists in significant numbers in the national economy as is required by the [Social Security] Regulations." (*Id.*)

The Commissioner argues that the ALJ provided a valid explanation for not giving the VA ratings great weight by pointing out that the VA and the SSA had different disability determination processes, as well as the fact that "the VA ratings did not provide a function-by-function assessment of Plaintiff's residual functional capacity or whether Plaintiff could perform his past relevant work or other work existing in the national economy." (doc. 14 at 6-7.) "The difference in criteria between the VA and Social Security programs is not a valid reason for the ALJ to give only some weight to the VA rating," however. *Ayala v. Saul*, No. 4:19-CV-00146-P-BP, 2020 WL 1902571, at *4 (N.D. Tex. Feb. 3, 2020), *adopted by* 2020 WL 746625 (N.D. Tex. Feb. 14, 2020); *see also Allison v. Berryhill*, No. 1:16-CV-0170-BL, 2018 WL 1274853, at *6 (N.D. Tex. Feb. 16, 2018) (recognizing that although a "VA disability rating is not binding in the social security context," "that fact does not permit an ALJ to simply disregard VA findings without comment or discussion"); *Schenkler v. Colvin*, No. 3:14-CV-3214, 2015 WL 5611497, at *4 (N.D. Tex. Aug. 11, 2015), *adopted by* 2015 WL 5611193 (N.D. Tex. Sept. 23, 2015) ("[T]he fact that the VA's disability determination is not controlling in a Social Security proceeding [is not] a valid basis for rejecting the VA's disability determination regarding Plaintiff."). While the ALJ acknowledged the VA ratings in his decision, he appears to have concluded that the ratings were not entitled to great weight only because the VA's disability findings were based on a different disability determination process. (*See* doc. 9-1 at 26.) There is no indication that he scrutinized the VA ratings or gave them any meaningful consideration in his decision. *See Albo*, 2013 WL 5526584, at *8; *see also Johnson v. Colvin*, No. EP-15-CV-0189-LS, 2016 WL 3982569, at *4 (W.D. Tex. July 20, 2016) ("Without a

meaningful discussion in the ALJ's decision, there is no indication that the ALJ properly scrutinized the VA disability rating."). As discussed, ALJs must provide "specific reasons" for not giving "great weight" to VA disability determinations. *Chambliss*, 269 F.3d at 522-23.[7]

Because the ALJ only acknowledged Plaintiff's VA ratings, but failed to give them any meaningful consideration or to provide any specific reasons for declining to give them great weight, he committed legal error. *See Schenkler*, 2015 WL 5611497, at *4 (determining that the ALJ erred where he only considered the VA's disability determination but did "not make any subsequent references to the disability determination"); *Albo*, 2013 WL 5526584, at *8 (finding that the ALJ committed legal error in failing to properly consider the VA's rating of total disability); *Lark v. Saul*, No. CV H-18-543, 2019 WL 4450998, at *5 (S.D. Tex. Sept. 17, 2019) ("While, the ALJ noted that the VA had made a disability determination, and that VA determinations are not binding on the Commissioner, other than this cursory, boilerplate language, the ALJ failed to give [claimant's] VA disability rating, any meaningful consideration or to provide any reasons for discounting it."); *McCown v. Astrue*, No. G-06-745, 2008 WL 706704, at *17 (S.D. Tex. Mar. 14, 2008) (finding legal error where the ALJ only acknowledged the VA rating in his decision and stated that the rating was not binding and was inconsistent with objective medical record).

"Harmless error analysis does not apply to an ALJ's failure to consider and weigh the VA's disability rating." *Ayala v. Berryhill*, No. 4:17-CV-00783-O-BP, 2018 WL 1470626, at *5 (N.D. Tex. Mar. 8, 2018), *adopted by* 2018 WL 1457246 (N.D. Tex. Mar. 23, 2018); see also *Rasco*, 2018

---

[7]The Commissioner also points to a recent revision to the regulations that clarify that ALJs need not provide any analysis about disability decisions of other agencies, in support of his argument that "VA ratings are irrelevant to disability under the Social Security Act." (doc. 14 at 3 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 2017 WL 168819 (Jan. 18, 2017)). As the Commissioner acknowledges, however, this revision went into effect for claims filed on or after March 27, 2017, and does not apply to this case. (*See id.*)

WL 587948, at *4 ("'[T]he failure of the ALJ to consider the VA's disability determination is the type of legal error that is not subject to the harmless error analysis as the Court cannot try issues de novo, reweigh the evidence, nor substitute its findings for those of the Commissioner.'" (citations omitted)); *see also Johnson*, 2016 WL 3982569, at *4 (holding that the "ALJ's failure to properly discuss the VA disability rating constitutes reversible error warranting a remand").

Plaintiff contends that the proper recourse is remand with instruction to award benefits. (doc. 12 at 24.) If an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, at * 10 (N.D. Tex. Sept. 22, 2009). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). The Commissioner, not the court, resolves evidentiary conflicts. *Newton*, 209 F.3d at 452. Inconsistencies and unresolved issues in the record therefore preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005) (per curiam). The record in this case is insufficient to remand with instruction to award benefits. *See, e.g., Rasco*, 2018 WL 587948, at *5 ("[T]he Court cannot direct an award in Plaintiff's favor, as Plaintiff urges, because the ALJ disregard of the VA determination does not automatically entitle Rasco to an award of benefits."). Accordingly, this case must be remanded to the ALJ to apply the correct legal standard.[8]

## V.  CONCLUSION

The Commissioner's decision is **REVERSED in part**, and the case is **REMANDED** for further proceedings.

---

[8]Because this error requires remand, and the ALJ's consideration of the VA ratings may affect the remaining issues, it is unnecessary to reach them.

**SO ORDERED** on this 2nd day of November, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE